May it please the Court, Alexander Villamar for Defendant Appellant Lawrence Shaw. This matter is an appeal from a denial of a motion to set aside a default judgment entered at the request of the Securities and Exchange Commission before the U.S. District Court, District of Nevada. Mr. Shaw sought to set aside his judgment under FRCP 60B. For purposes of this appeal, Mr. Shaw is proceeding under 60B-4 for a void judgment based on lack of personal jurisdiction. Could I ask a preliminary question? Who bears the burden of proving a proof in this context for service of process? The case law, the Ninth Circuit case law indicates that, and we readily acknowledge that the plaintiff's proof of service constitutes a prima facie evidence of valid service. And for a defendant to overcome that, he must show strong and convincing evidence. We of course maintain that he was never served and that the District Court erred in its factual findings in that regard. I didn't catch your answer. Who bears the burden of proof? The plaintiff does. And the plaintiff's proof of service is prima facie evidence of service. And in challenging that, a defendant must overcome that by strong and convincing evidence. And we believe we have shown that and that the District Court — Who bears the burden to overcome that? That's correct. Okay. That's correct. Now, the standard of proof is the following. Whether the default judgment is void for want of jurisdiction, which is the case here, is a question of law reviewed de novo. The District Court's factual findings in regard to a motion to set aside are reviewed for clear error. And we maintain that the factual findings upon which the District Court made its factual findings are clearly erroneous. And I'll go into that now. The Court also misinterpreted the law. With respect to the law, the District Court stated that the motion must be brought within six months of learning of the default judgment. And that's an incorrect statement of law. In fact, this Court held in Meadows v. Dominican Republic that there is no time limit on a Rule 60b-4 motion to set aside a void judgment. Can we back up to your statement that the District Court was clearly erroneous in its finding? Sure. The District Court found, based on the affidavits that were supplied to it, that your client was served by a process server in England. And your client's explanation that that couldn't be true because he wasn't there that day was refuted by the fact that the evidence showed that, while there may very well have been a meeting, there was sufficient time for him to get back in order to be served. What's clearly erroneous in that factual finding that would permit us to overturn the District Court's conclusion? In that regard, what the District Court stated, it made a number of findings. It stated that it found it patently incredible, those are the District Court's words, that Shaw lacked the knowledge of the judgment because newspapers in Coventry, where the business was located, carried stories about it. And now, in fact, the newspapers carry stories that, in action, a lawsuit had been filed. There is no mention of a judgment or of service of process upon Mr. Shaw in those newspaper stories. With respect to the keep act here, we have an affidavit from the process server saying, I served him. We have an affidavit from Mr. Shaw saying, I was never served. And then there were some inconsistencies in the affidavit of Mr. Shaw. But even if there hadn't been inconsistencies, you have a he said, she said. And if the defendant bears the burden of proof, why isn't the District Court correct? It's clear the District Court's findings are clearly erroneous because of several reasons. The first is it based its decision, for example, on the newspaper stories. And that was incorrect to what it stated there. In addition, the District Court stated that Mr. Shaw's only evidence was his own uncorroborated affidavit. And it was very impressed that the alleged process server, Mr. Keith Johns, submitted two affidavits of service. In fact, Mr. Shaw, in addition to his own affidavit of service, yet he submitted a computer printout of his calendar for that day, indicating he had a meeting in London with Mr. Graham Persky at 11 o'clock. The printout indicates that he had to wait for Mr. Persky until 1126, that their meeting was then interrupted because Mr. Persky had to meet with his accountant, that he was then able to meet again with Mr. Persky, and then they went to lunch. And so that would cover, assuming, I think the printout indicates they went to lunch at 1230. Assuming he had started the day in Coventry, which he indicates he did not, he maintains he wasn't in Coventry at all that day, to get to, if Coventry and London are two hours apart, to be in London by 11 o'clock, he'd have to leave by 9 in the morning. Assuming a one-hour lunch, if he departed London at 1.30, he'd be back in Coventry at 3.30. So he would have been away from Coventry from approximately 9 in the morning until approximately 3.30. But the problem I have with it, it still doesn't, what's the word, deny the possibility that he could have been served either early in the morning or in the afternoon. Towards that end, there is a letter from an employee of BMI, and that's on page 110 of the record, which indicates, and that was a letter from BMI to the Commission, indicating that he had been served at noon, which would make service upon him impossible because he was in London, or at least away from. What did they do about the evidence from the scheduler at the building who said, I don't have any record of this meeting ever occurring? That was an error, actually, and they followed up with the Commission and sent two subsequent emails indicating that the first letter was an error. I think it's called Sky Pharma. That's the building in which the meeting took place. They looked for a meeting between Mr. Shaw and Sky Pharma. There was no such meeting. The meeting was between Mr. Shaw and Mr. Persky in the Sky Pharma building, and Mr. Shaw did provide two emails from Kate Neal, an assistant of Mr. Persky's, indicating that a meeting did take place there that day. There was also one from Mr. Peter Lane of Sky Pharma, the entity that leased the space to Mr. Persky, indicating that the meeting took place. These emails were addressed from these individuals to the Commission, so they didn't go through Mr. Shaw. There was direct correspondence between the Commission and these individuals. And around this same time, the – go ahead. Is that admissible evidence? Well, it's not – I mean, it sounds to me like you're saying – they are unsworn statements, but these individuals had – they had nothing to gain from making this up. Why couldn't the district court, in evaluating the evidence, consider the unsworn nature and reject that proffered evidence because it's not admissible under the rules of evidence? It seems that they didn't consider it at all. They didn't take this information into account. Why would that be error as a matter of law sufficient to permit us to overturn the district court's factual finding if it's not admissible evidence? I would submit that the SEC knew – the SEC was corresponding with these individuals. They submitted, I think, the original – the September 13th letter from Sky Pharma indicating that there was no such meeting. They had these emails and they knew about – You're not answering my question. My question is why is that error as a matter of law if the district court rejects it or does not consider it? I wouldn't – Because it does not consider it to be reliable evidence. I guess that would be up to the district court's determination, what weight to give it considering it's unsworn evidence. I believe the district court should have taken it into account even though they were unsworn statements and weighted appropriately. In addition, Mr. Shaw did provide evidence from a firm by the name of Brindley, Twist, Taft & James. This firm was working on behalf of the British DTI, the SEC equivalent in the UK. There was correspondence between this firm and the commission. This firm was inquiring of the SEC. They were looking into the service process scenario in this case and they ultimately believed Mr. Shaw and recommended at the DTI discontinue the action against him in the UK and that's what actually happened. Thank you, counsel. Your time has expired. Good morning. May it please the court, I'm Susan McDonald representing the Securities and Exchange Commission. I just want to make sure I understand correctly that opposing counsel has today stated that the appeal is based solely on the 60B4 ground, that he's no longer pursuing the 60B1 and 3 grounds that were raised previously, so I will only address the 60B4 and that has been the whole discussion heretofore. Certainly the district court's finding was not clearly erroneous. Even if the burden was on the commission, which we don't believe it was, under the Burda Media and the Valley Export cases, they explain why in a situation like this the burden should be on the defendant to show that he was not served, but I won't go into that at the moment because it doesn't really matter in this case. Even if the burden is on the commission, as defendant's counsel has conceded, the commission presented prima facie evidence that Mr. Shaw was personally served by the process server in England and the district court found that there was no credible evidence presented to refute that. The district court found very correctly that Mr. Shaw's self-serving affidavits were incredible. They had major inconsistencies in them and of course, having been there and been served, he knew approximately what time he was served and therefore it would have been very easy for him to create this calendar entry to be a time conveniently near the time of service, assuming that was the time of service. And I would just point out that the process server never stated what time it was and that letter from a secretary or someone at his firm is the only place that refers to a 12 o'clock time and the commission did not put that in to the record as evidence of the time of service. It was just put in to show the course of events, how the process took place, process in a different sense, the hiring of the firm, BMI, etc. And the secretary could have been mistaken. The process server himself never said it was 12 o'clock. May I back up just a minute? I gather your position is that you think you did have the burden of proof under the case law. Did I misunderstand you? We believe we did not have the burden of proof for the reasons stated in Berta Media and Bally Export because Bally Export is the one that sort of explains the rationale behind that. Maybe I misunderstood your statement. I was saying even if we did, so we say we did not, that the burden was on him, but even if we did, we presented prima facie evidence and of course I'll just very briefly explain as the court did in that Bally Export case and Berta Media adopted that that where the defendant is on notice of the filing of the action and therefore knows when the 120 days expires and therefore the defendant could file a motion under 12B5 to dismiss for lack of service of process, the defendant could move at that time and I would like to also point out that proof of service was filed with the court here on June the 12th, 2001 and you'll see that in the record on the docket sheet at page 322 so that was a matter of public record that the defendant could have easily verified that the commission had filed proof of service. At any rate, Bally Export explains that for this reason if a defendant waits and doesn't question service until after a default judgment is entered that the burden should be on the defendant because otherwise the plaintiff will have probably lost valuable evidence that could have been presented to support its assertion that service of process was made and especially here where it's so long after the service it was four or more years after service was made that the motion to vacate the default was filed so at any rate but even if, as I said even if the burden was on the commission the commission presented prima facie evidence and the district court held quite correctly that these inconsistent self-serving affidavits did not overcome that evidence and the emails, I would just like to point out that as the court mentioned these emails are unsworn the Mr. Persky the record shows Mr. Persky at page 268 of the record you'll see a reference that Mr. Persky was involved in the business matters that are part of the commission's substantive case so Mr. Persky was a friend of Mr. Shaw's and had been involved with him in this whole scheme that was the subject of the commission's action and Ms. Kate Heal's email at page 210 you'll see that her email simply said that Mr. Persky and she had a strong belief that a meeting took place but provided nothing to support that and of course no sworn statement she refers to a third party email that was contemporaneous our trial counsel attempted to get a copy of that and it was never provided and you'll see reference to that in Jeffrey Norris' affidavit that's attached to the commission's response to their reply so it's at the it's Norris' second affidavit I believe his supplemental affidavit attached to the response that begins on page 284 of the record excerpts and let me just see if there was anything else I wanted to mention I think there are other inconsistencies in Mr. Shaw's I think those are set forth in your brief Any further questions from the panel? Thank you very much The case just heard will be submitted You used up all your time on your first round We'll proceed with argument in the next case on the oral argument calendar which is real properties versus steward annoyances
judges: Thomas, Tallman, Ikuta